UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| GARY DUNN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 09-382-P-S |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the commissioner supportably found that the plaintiff, who alleges that he has been disabled since February 1, 2003, by chronic fatigue syndrome, fibromyalgia, hypothyroidism, asthma, dizziness, impaired concentration, and confusion, suffered from only two non-severe medically determinable impairments, hypothyroidism and asthma. I recommend that the decision of the commissioner be vacated, and the case remanded for further development.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had medically determinable impairments of hypothyroidism and asthma, Finding 3, Record at 29; that he did not have an impairment or combination of impairments that had significantly

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 17, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

limited, or was expected to significantly limit, his ability to perform basic work-related activities for 12 consecutive months and, therefore, did not have a severe impairment or combination of impairments, Finding 4, *id*.; and that he, therefore, had not been under a disability from February 1, 2003, through the date of the decision (March 18, 2009), Finding 5, *id*. at 32.[2] The Decision Review Board declined to disturb the decision, *see id*. at 1-3, thus making it the final determination of the commissioner, 20 C.F.R. § 405.450(a); *Dupuis v. Secretary of Health & Human Servs*., 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

With respect to the plaintiff's SSD claim, the administrative law judge reached Step 2 of the sequential process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs*., 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an

---

[2] The plaintiff was insured for SSD benefits through June 30, 2009, *see* Finding 1, Record at 28, subsequent to the date of decision.

individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

The plaintiff contends that the administrative law judge erred in (i) failing to follow Social Security Ruling 99-2p ("SSR 99-2p") in evaluating the severity of his chronic fatigue syndrome, (ii) making a Step 2 finding unsupported by substantial evidence, and (iii) applying an incorrect Step 2 "severity" standard. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (Docket No. 12) at 12-19. On the basis of the first two points of error, which are intertwined, I conclude, and recommend that the court find, that reversal and remand are warranted.[3]

### A. Overview: SSR 99-2p

SSR 99-2p lays out a method for evaluating chronic fatigue syndrome ("CFS"), setting forth both the Centers for Disease Control and Prevention ("CDC") definition of the condition and the additional findings necessary to establish a medically determinable impairment for Social Security disability purposes. *See* SSR 99-2p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009), at 198.

### 1. CDC Definition

CFS "is a systemic disorder consisting of a complex of symptoms that may vary in incidence, duration, and severity" and "is characterized in part by prolonged fatigue that lasts 6 months or more and that results in substantial reduction in previous levels of occupational,

---

[3] With respect to the plaintiff's third point of error, *see* Statement of Errors at 17-19, the administrative law judge did indeed commit error in omitting to set forth important glosses on non-severity determinations contained in SSR 85-28 and *McDonald*, *see* Record at 17-19. Because I have determined, and recommend that the court find, that reversal and remand are warranted on the basis of the first two points of error, I need not consider whether the omission of this gloss was itself reversible error. However, the commissioner is expected to correct this error if the court agrees that reversal and remand are warranted.

educational, social, or personal activities." *Id*. "In accordance with criteria established by the CDC, a physician should make a diagnosis of CFS only after alternative medical and psychiatric causes of chronic fatiguing illness have been excluded." *Id*. (citation and internal quotation marks omitted).

The CDC definition of CFS requires the concurrence of four or more of the following symptoms, all of which must have persisted or recurred during six or more consecutive months of illness and must not have pre-dated the fatigue: (i) self-reported impairment in short-term memory or concentration severe enough to cause substantial reduction in previous levels of occupational, educational, social, or personal activities, (ii) sore throat, (iii) tender cervical or axillary lymph nodes, (iv) muscle pain, (v) multi-joint pain without joint swelling or redness, (vi) headaches of a new type, pattern, or severity, (vii) unrefreshing sleep, and (viii) postexertional malaise lasting more than 24 hours. *See id*. at 199.

### 2. Establishment of Medically Determinable Impairment

While, under the CDC definition, "the diagnosis of CFS can be made based on an individual's reported symptoms alone once other possible causes for the symptoms have been ruled out[,]" CFS must also constitute a medically determinable impairment, as shown through a medical sign or laboratory finding, for Social Security disability purposes. *Id*. at 200.

Medical signs that establish the existence of a medically determinable CFS impairment include, *inter alia*, the following, if clinically documented over a period of at least six consecutive months: "[p]ersistent, reproducible muscle tenderness on repeated examinations, including the presence of positive tender points[.]" *Id*. (footnote omitted).

Laboratory findings that establish the existence of a medically determinable CFS impairment include, *inter alia*, either of the following: (i) "[a]n elevated antibody titer to

4

Epstein-Barr virus (EBV) capsid antigen equal to or greater than 1:5120, or early antigen equal to or greater than 1:640[,]" or (ii) "[a]n abnormal magnetic resonance imaging (MRI) brain scan[.]" *Id*. at 201.

Mental findings that establish the existence of a medically determinable CFS impairment include, *inter alia*, either of the following: (i) "ongoing problems with short-term memory, information processing, visual-spatial difficulties, comprehension, concentration, speech, word-finding, calculation, and other symptoms suggesting persistent neurocognitive impairment[,]" when "ongoing deficits in these areas have been documented by mental status examination or psychological testing," or (ii) exhibiting medical signs, such as anxiety or depression, indicative of the existence of a mental disorder, when such medical signs are present and appropriately documented. *Id*.

### B. Application of SSR 99-2p to Facts of This Case

The administrative law judge did not cite SSR 99-2p in assessing the plaintiff's alleged CFS or, inasmuch as appears, follow its dictates. The critical question, for purposes of this appeal, is whether that error is harmless. While that question is not free from doubt, in view of the administrative law judge's wholesale failure to adjudicate the question of CFS in accordance with the controlling regulation, I resolve doubts against the commissioner and recommend that the court vacate the decision and remand the case.

Margaret Webb, M.D., a treating physician, submitted a letter dated February 27, 2008, stating that the plaintiff had CFS as well as hypothyroidism and hyperparathyroidism. *See* Record at 466. She stated that "[t]he combination of these three conditions [] causes overwhelming fatigue and difficulty concentrating." *Id*. She added:

> In my opinion he is fully disabled and unable to work based on his Chronic Fatigue Syndrome. He is unable to focus on any task for more than an hour and

requires multiple rest breaks from even light housework.  He has days when he is unable to leave his home due to overwhelming fatigue and myalgias.

*Id*.

### 1. CDC Criteria

Unfortunately, the plaintiff did not timely provide the administrative law judge with copies of Dr. Webb's underlying treatment notes.[4]  Yet, that omission notwithstanding, the record contains evidence suggesting that the plaintiff met the CDC criteria, including:

a. The presence of prolonged fatigue lasting significantly longer than six months, *see, e.g., id*. 30 (acknowledgement by administrative law judge that "[t]he file is replete with volumes of medical records indicating that the [plaintiff] has been seen by numerous practitioners of various kinds who have given him multiple different diagnoses and several different therapeutic interventions" and that "[n]umerous tests and procedures have been performed in search of a cause of his fatigue"), 263 (complaint to Roger L. Hybels, M.D., on November 14, 2006, of "many chronic somatic symptoms such as fatigue and a feeling of ill-

---

[4] At oral argument, both the plaintiff's and the commissioner's counsel agreed that it is unclear on the record whether the plaintiff submitted, for the first time to the Decision Review Board, a copy of a treatment note of Dr. Webb dated May 27, 2008.  *See* Record at 4, 69-72.  There is some indication that the plaintiff and his wife submitted it directly to the Decision Review Board.  *See id*. at 4, 7.  In Social Security cases, as in other contexts, the plaintiff, rather than the court, judge, or fact-finder, bears the burden of ensuring that evidence meant to be tendered has in fact been offered into evidence.  *See, e.g., McHugh v. Astrue*, Civil No. 09-104-BW, 2009 WL 5218059, at *2 (D. Me. Dec. 30, 2009) (rec. dec., *aff'd* Jan. 20, 2010).  The plaintiff fails to carry that burden with respect to the May, 27, 2008, Webb note.  Accordingly, to the extent that he invites the court to consider it in assessing the sustainability of the decision of the administrative law judge, who evidently never saw it, *see* Statement of Errors at 7-8, 14, I decline to do so.  The First Circuit has made clear that there are only two circumstances in which evidence submitted for the first time to the Appeals Council (or, in this case, the Decision Review Board) can form the predicate for a district court remand: (i) when the evidence is new and material and a claimant demonstrates good cause for its belated submission and (ii) when, regardless of whether there is such good cause, the Appeals Council has given an "egregiously mistaken ground" for its action in refusing review in the face of such late-tendered evidence.  *Mills v. Apfel*, 244 F.3d 1, 5-6 (1st Cir. 2001).  The plaintiff's counsel raised for the first time during rebuttal at oral argument a contention that the Webb note is new and material and that his client had demonstrated good cause for its belated submission.  That point was not seasonably raised and, therefore, is deemed waived.  *See Farrin v. Barnhart,* No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).

being and he has to stay in bed frequently"), 272 (complaint to John K. Sullivan, M.D., on March 8, 2007, of feeling "significantly fatigued most of the time"), 413 (notation by Daniel Oppenheim, M.D., on October 4, 2007, that the plaintiff "[s]till describes waves of fatigue, exhaustion, weakness, nausea, decreased stamina, arm numbness, fluctuating temperature tolerance"). In addition, the plaintiff reported that fatigue greatly impacted his functioning. *See, e.g., id.* at 263 (complaint to Dr. Hybels on November 14, 2006, that he had to stay in bed frequently), 299 (complaint to Richard K. Maurer, N.D., on April 9, 2002, that his symptoms were debilitating and that he was incapacitated one to five days a month), 426 (description by Amy Kustra, M.D., on September 19, 2007, of plaintiff as "experiencing extreme fatigue which has resulted in him leaving his job and at times not being able to leave his house for weeks").

      b.      The ruling out of numerous possible alternate causes of fatigue. *See, e.g., id.* at 30-31 (statements by administrative law judge that "[n]umerous tests and procedures have been performed in search of a cause of [the plaintiff's] fatigue, such as adrenal function, acupuncture, toxic element clearance, and stool analysis, however, no test has ever been conclusive regarding his fatigue" and that a CT scan, neurological examination, brain MRI, and examination of the plaintiff's kidneys by a nephrologist did not reveal any etiology for his fatigue), 426 (notation by Dr. Kustra that the plaintiff had had extensive workups done by numerous specialists that had been unrevealing).

      c.      The presence of at least four of the requisite CFS symptoms persisting or recurring for more than six months of illness:

      1.      <u>Self-reported impairment in short-term memory or concentration severe enough to cause substantial reduction in previous levels of occupational, educational, social, or personal activities.</u> *See, e.g., id.* at 247 (complaint to Liam McClintock, N.D., on May 19, 2004, that his

"brain is all fuzzy" and he "cannot focus and think straight"), 272, 279 (complaints to Dr. Sullivan on March 8, 2007, of feeling "not cognitively sharp" and having memory loss), 287 (notation by physical therapist on March 5, 2007, that plaintiff was "very tired appearing" and had "trouble maintaining focus").

    2.    <u>Muscle pain</u>. *See, e.g., id*. at 247 (complaint to Dr. McClintock on May 19, 2004, of pain in his muscles), 279 (complaint to Dr. Sullivan on March 8, 2007, of arm pain), 521 (complaints to Elizabeth F. Labaugh, BS, LMT, who treated the plaintiff with neuromuscular massage therapy and related manual techniques off and on from October 15, 1991, through November 15, 2005, of pain in the low back, hips, neck, head, and upper extremities, particularly the elbows), 563 (finding by Stephen Bien, M.D., on examination on December 14, 1992, of tenderness in numerous muscles, especially the forearms).

    3.    <u>Headaches of a new type, pattern, or severity</u>. *See, e.g., id*. at 238, 242, 246 (complaints to Dr. McClintock on January 6, 2005, August 20, 2004, and May 27, 2004, of headaches or migraine headaches), 273 (report to Dr. Sullivan on March 8, 2007, of a nearly 10-year history of symptoms of head pressure and fatigue as well as severe headaches over at least the last three years or more, indicative of migraine without aura or possibly migraine with aura, with a component of likely chronic tension-type headache), 378 (complaint to Rich Charlebois, D.O., on April 25, 2005, of headaches, with Dr. Charlebois noting a past history of migraines).

    4.    <u>Unrefreshing sleep</u>. *See, e.g., id*. at 240, 245 (complaints to Dr. McClintock on June 3, 2004, and November 12, 2004, that sleep did not relieve fatigue), 365, 367 (complaints to Dr. Charlebois on October 26, 2005, and September 28, 2005, of fatigue, malaise, and sleep disorder).

5. <u>Postexertional malaise lasting more than 24 hours</u>. *See* above description of the presence of prolonged fatigue lasting more than six months.

## 2. Existence of Medically Determinable Impairment

While it is a closer question, the record also appears to contain at least one requisite "sign" for purposes of establishing the existence of a medically determinable impairment: a neurocognitive problem with "sustainability," or sustained performance at a work-like task. On referral from Dr. Webb, Margaret M. Zellinger, Ph.D., ABPP, a licensed psychologist who is board-certified in clinical neuropsychology, conducted a clinical interview of both the plaintiff and his wife and administered a battery of tests on June 2, 2008, following up with a "feedback" session on June 12, 2008. *See id*. at 495, 510. Dr. Zellinger concluded that, although the plaintiff was quite bright and possessed adequate ability to understand and remember new information for purposes of functioning at work, he demonstrated difficulty with sustained attention and perseverance. *See id*. at 509. She wrote:

> His primary problem is with <u>sustainability:</u> It is judged that he would not be able to work five 8-hour days with breaks every 2 hours. He appeared very tired by 1:20 pm, and his speech was slurred by 2 pm. Although he was able to maintain an adequate level of performance despite his fatigue, he reported napping several times the following day. It is unlikely that he would be able to sustain the level of performance demonstrated in the evaluation for several days in a row. Furthermore, his physical appearance and slurred speech when he was fatigued would make his appearance/behavior unacceptable for a public work environment.

*Id*. at 509-10.

There are also indications of record, from Dr. Zellinger and others, that the plaintiff had depressive symptoms, possibly sufficient to constitute a second "sign" for purposes of assessment of a medically determinable CFS impairment. *See, e.g., id*. at 263 (observation by Dr. Hybels that the plaintiff had possible depression), 349 (observation by Dr. Maurer that the

plaintiff "[t]ends to depression. World going to crap[.]"), 416 (assessment by Dr. Oppenheim that the plaintiff's medical problems included depression; notation of "[s]lightly flattened affect"), 425 (assessment by Dr. Kustra that the plaintiff was depressed, for which she prescribed Lexapro; notation that his mood was up and down and he was "tearful a lot"), 508 (observation by Dr. Zellinger that the plaintiff's responses to self-report measures indicated the presence of moderate to severe depression, which would be expected to exacerbate his symptoms of CFS).[5]

### 3. Administrative Law Judge's Approach

The administrative law judge rejected Dr. Webb's CFS diagnosis, stating, in relevant part, that it was "without substantial support from clinical and objective findings." *Id*. at 31. He further noted, in relevant part, that a non-examining DDS medical consultant, Herbert Blumenfeld, M.D., had reviewed the plaintiff's medical records and found that the record did not contain evidence of musculoskeletal abnormalities, tender points, or other findings usually associated with the diagnoses of fibromyalgia or CFS – an opinion that the administrative law judge found "highly persuasive." *Id*.; *see also id*. at 468.

---

[5] The plaintiff argues that the record contains evidence of two different laboratory findings sufficient to prove his CFS a medically determinable impairment: an elevated antibody titer to EBV and an abnormal MRI brain scan. *See* Statement of Errors at 14. Yet, the cited record pages do not reveal the requisite findings. The cited EBV test result, regarding a sample collected on April 14, 2008, simply indicates a positive result. *See* Record at 514. It does not indicate whether the test revealed a "capsid antigen equal to or greater than 1:5120, or early antigen equal to or greater than 1:640[.]" SSR 99-2p at 201. In addition, as noted by counsel for the commissioner at oral argument, a Disability Determination Services ("DDS") nonexamining medical expert, Paul Stucki, interpreted an EBV test of a sample collected on March 9, 2007, which revealed two positive findings, as to EBV IgG and EBV Nuclear AG, and one negative one, as to EBV IgM, as negative. *See* Record at 289, 394. With respect to the brain scan, the cited portions of the record indicate that, although evidence of sinus disease was found, the plaintiff had a normal MRI brain scan. *See id.* at 267, 270-71. The plaintiff also contends that the record documents another medical sign of CFS, "[p]ersistent reproducible muscle tenderness on repeated examinations[.]" Statement of Errors at 14 (quoting SSR 99-2p, at 200). Yet, he overlooks that this sign must be clinically documented over a period of at least six consecutive months. *See* SSR 99-2p at 200. He points to two examinations by Dr. Bien and one by Dr. Webb, as well as collections of physical therapy notes. *See* Statement of Errors at 14. As mentioned above, the Webb record, submitted for the first time to the Decision Review Board, is not cognizable for purposes of this appeal. In any event, Dr. Webb's notes, as well as those of Dr. Bien, reflect assessment only as of three particular dates, October 27, 1992 (Bien), December 14, 1992 (Bien), and May 27, 2008 (Webb). *See* Record at 71, 563. While the physical therapy records cover more extensive time spans, they appear to reflect "symptoms" (the plaintiff's self-reports) rather than "signs" (reproducible muscle tenderness on examination). *See id*. at 286-98, 526-58.

At oral argument, counsel for the commissioner contended that the administrative law judge properly relied on the opinion of Dr. Blumenfeld, an agency medical expert presumed to possess expertise in the rules for evaluation of Social Security disability, which include the evaluation of CFS pursuant to SSR 99-2p. *See* 20 C.F.R. § 404.1527(f)(2)(i) ("State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation."). She posited that the addition to the record of the Zellinger report did nothing to undermine reliance on the Blumenfeld opinion, Dr. Zellinger having been hired specifically to bolster the plaintiff's disability claim and having rested her finding of sustainability problems on the plaintiff's self-report.

Even assuming that Dr. Blumenfeld should be presumed to have analyzed the plaintiff's claimed CFS in accordance with SSR 99-2p, although his familiarity with that ruling is not apparent from his cursory explanation, *see* Record at 468, the Zellinger report, if credited, could serve as a "sign" of CFS, namely a "persistent neurocognitive impairment" in the form of difficulty with sustained attention and perseverance, *see* SSR 99-2p at 201; Record at 509-10. The administrative law judge summarized, but never analyzed, the Zellinger opinion. *See id*. at 31-32. In the circumstances, the Blumenfeld report cannot serve as substantial evidence that the plaintiff did not have a medically determinable CFS impairment pursuant to SSR 99-2p. *See Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone

constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted).

As the plaintiff notes, *see* Statement of Errors at 17, the administrative law judge also ignored two other conditions that the evidence indicates may have been medically determinable impairments: headaches and depression, *see* Record at 29-32. That, too, requires reversal and remand.[6]

Because, as noted above, the record reveals a colorable claim that the plaintiff had a medically determinable CFS impairment as defined by SSR 99-2p, these errors cannot be discerned to be harmless. Reversal and remand are required for proper consideration of the plaintiff's claimed CFS in accordance with the dictates of that ruling, as well as whether he suffered from medically determinable impairments of depression and headache and, if so, their severity.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

---

[6] The plaintiff also claims that the administrative law judge erred in rejecting his allegation that he had medically determinable fibromyalgia. *See* Statement of Errors at 17. I disagree. The administrative law judge addressed that condition, rejecting it on the basis that he did not find Dr. Bien's diagnosis reliable and, in an evident reference to Dr. Blumenfeld's opinion, that there was a general absence in the record of findings usually associated with fibromyalgia. *See* Record at 31, 468. While Dr. Blumenfeld did not have the benefit of the Bien record, it would not likely have changed his opinion. On October 27, 1992, when the plaintiff presented to Dr. Bien complaining of tight, sore forearms and areas of tightness in his back, Dr. Bien questioned whether he was suffering from fibromyalgia. *See id*. at 563. When the plaintiff returned on December 14, 1992, Dr. Bien diagnosed fibromyalgia, noting that the plaintiff was suffering from tenderness in a number of muscles, especially his forearms. *See id*. Dr. Bien prescribed Elavil and noted that the plaintiff was to return in three to four months. *See id*. As the administrative law judge pointed out, albeit with mistaken reference to the October 27 visit rather than the December 14 visit, *see id*. at 31, there is no indication that the plaintiff returned for treatment. The plaintiff points to no diagnosis of fibromyalgia by any of the numerous practitioners whom he consulted thereafter, including those who treated him after his alleged date of onset of disability on February 1, 2003.

## NOTICE

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 28th day of June, 2010.

                                        /s/ John H. Rich III
                                        John H. Rich III
                                        United States Magistrate Judge